The next matter, number 25-1078, Linnell Cox versus Ishmael Almeida et al. At this time, would counsel for the appellant please come to the podium and introduce themselves on the record to begin. Good morning, your honors. Jesse Rossman on behalf of the plaintiff, Linnell Cox, who is here with us today along with her two daughters. I'd like to reserve three minutes for rebuttal if I may. You may. And let me ask you a question so I don't interrupt you when you start, but the Kingsley case was decided by the Supreme Court and then the circuit decided the Miranda-Rivera and Zink cases. So those cases would seem to be binding on the court or the law of the circuit. So if that is correct, or you can explain why it's not correct, isn't, you're entitled to the hearing today, but shouldn't we be unable to do anything unless the court sits and bunk eventually? So that's my question. We don't believe, your honor, that Miranda-Rivera or Zink binds this court's hands. I'll take them each in turn. Miranda-Rivera simply repeated the off-stated line that the 14th Amendment provides at least as much protection as the 8th Amendment before going on to determine that the plaintiff survived summary judgment because they met that more stringent standard. But simply acknowledging that the 8th Amendment is the floor for due process protections does not bind this court's hands from determining the ceiling of the 14th Amendment due process protections. Is it reasonable to interpret Miranda-Rivera as saying that it did not need to reach the 14th Amendment question because there was an issue of material fact even under the 8th Amendment? I think that's right, your honor. And certainly looking at the way that other courts of appeals have interpreted the First Circuit's position post-Kingsley, it's very frequent in the appellate courts that have grappled with Kingsley to include long string cites of what other circuit courts have done, and repeatedly the First Circuit is not cited as a court that has weighed in on this issue. So I think appellate courts, in addition to district courts within this circuit, believe that the First Circuit has not yet weighed in. Zink is in a slightly different position. That case did involve a pretrial detainee, but the case was pled below in the complaint as a violation of the 8th Amendment right to be free from cruel and unusual punishment. And that's how the case was argued before the court, and it's therefore no surprise that the decision talks about the rights under the 8th Amendment and, in fact, cites the 8th Amendment 10 times. It doesn't cite the due process clause a single time. Now, that may have been an error on the part of the plaintiff's counsel in Zink, but that error should not now be compounded to suggest that the First Circuit has already affirmatively established the ceiling under the due process clause in a case that does not even cite the due process clause a single time. Do you know if, in the Zink case, the appellant's brief talked about Kingsley at all? It did not, Your Honor. Kingsley was not raised either in the briefing or during oral argument in Zink or in Miranda-Rivera, for that matter. The Kingsley case had come out after briefing had finished in Miranda-Rivera. So we think this question is squarely before this court, and we think there are good reasons to join the Second, Fourth, Sixth, Seventh, and Ninth Circuits to hold that the objective standard applies. And perhaps to set the stage for this case, just to explain, Cox is bringing this case on behalf of her son, Shane Stilfen, who died in a cell after defendants repeatedly saw his severe intoxication, including walking by his cell when he lay unmoving in a contorted position for a course of an hour nine times in a period where Narcan could have saved him. And the jury was presented with what a reasonable officer would have done when they saw this unjustifiably high risk of harm. A non-defendant officer, Officer Doolin, banged on the door during his first cell check when he saw Mr. Stilfen in the same position that defendants had ignored. Even if the objective test had been here, that test would still have taken into consideration the circumstances that occurred that night, right? And as I read the testimony, it sounds like it was a very unusual night in that cell block. It was more chaotic than these officers had ever seen before. That still plays in even under the test you want us to adopt, right? The jury certainly, Your Honor, would be able to look at the whole of the evidence, and that included what the officers were presented with that night. But what the jury had seen, and Your Honors can look at this as well, is that Mr. Perry had been in District 4 between the hours of 3.18 and 4 a.m. During that period of time, two cell checks... Let me ask you this because, and I understand, I think the facts are really important here to both sides, but what we're really sort of tasked with, if you get beyond the law of the circuit, is this, what is this test that you're suggesting Kingsley sort of announced to see change in? So what is the standard you're asking us to adopt? What is the jury instruction that the court should have given? And are there other circuits that have adopted the instruction you think we should adopt here? Yes, Your Honor. We think the clearest articulation of the test is something akin to what both the Second Circuit did in cases like Charles and Darnell, and what the Fourth Circuit did in cases like Short. And essentially those cases adopted the civil recklessness standard that the Supreme Court announced in the Farmer case, and adapted it to deliberate indifference to a serious medical need. And what that would require here, Your Honor, is a showing of a serious medical need, and a showing that the officers failed to act in the face of an unjustifiably high risk of harm that the officers either knew or should have known based on the circumstances that were presented to them. And this largely tracks, Your Honor, the instruction that we presented to the court prior to its determination about which standard it was going to apply, and that's at docket 149 in the District Court. We think this is the right test to apply, both because it articulates the standard that the Supreme Court set forth in Farmer. It gives clear instruction to the District Court, both in this case but in future cases, about what's to apply. And I think looking at the ways that the lower courts have applied the Second Circuit decision is instructive in that regard. And it also provides the appropriate standard that's required under the Due Process Clause for pretrial detainees who have not been convicted of any crime. And I think that under that standard, it's clear that the facts here, Your Honor, it would have made a difference. This is a clear case where... So the District Court in this case, at the beginning of evidence, before any evidence had been introduced, said if he was going to boil down deliberate indifference to a single sentence, it would be showing that the officers affirmatively chose to do the wrong thing. And this was the lens that the jury viewed all of the evidence they were presented with. It is the same standard that the District Court articulated at the close of evidence. And the defendants repeated that phrase, affirmatively chose to do the wrong thing, three times in their opening and five times in their closing. The subjective standard was core to the defense's case here, and it's understandable why. All four of the officers testified that they did not know that Mr. Stolfin was intoxicated on July 14, 2019. Under the subjective standard, in the face of that testimony, the only way that the jury could have found in Ms. Cox's favor is if they looked at those officers and told them that they were lying. And that's a very high bar for a plaintiff to overcome. But under the objective standard, the jury could have looked at the whole of the evidence, and this is the standard that essentially is applied in LaPlante when we're looking at prejudice. They could have looked at the whole of the evidence and determined that the officers were telling the truth, but they could have still found in Ms. Cox's favor because an officer had been presented with that same evidence. If the judge had provided the instruction you requested, probably, or if this case were to be retried with that instruction, almost all of the same evidence would come in. It's just a matter of the jury assessing it from a different lens. It's the lens, Your Honor, exactly. What this case comes down to is... You're not alleging there's other evidentiary issues or mistrial issues. It's just the jury instruction. The jury instruction and what the jury was asked to determine. You couldn't argue based upon the instruction that you propose. I'm sorry, Your Honor, can you repeat that question? You could not argue to the jury, for example. Were you the attorney below, or it wasn't you? I was one of two counsel on trial. Okay, so below, you were unable to argue the objective standard to the jury. So you had to argue within the instruction given by the judge. Exactly, Your Honor. What had to be argued to the jury after the instruction was that these officers, though they claimed that they did not know that there was an unjustifiably high risk of harm, the jury had to disbelieve them, as opposed to being able to look at the whole of the evidence and determine that an objectively reasonable officer would have recognized that risk. I'm sorry, and I just want to be clear. Your argument is a 14th Amendment argument limited to pretrial detainees. So you're not saying that a solely objective standard wouldn't apply if the person were making an 8th Amendment argument. You're saying due process, pretrial detainees, objective standard. Exactly, Your Honor, and that tracks what Kingsley did. Kingsley, in articulating the objective standard, cited to due process cases that involved claims such as conditions of confinement, the policies of the jail, detention itself, and that's not just the Bell case, but also the Block case, Salerno, and Schall. And it was those cases that Kingsley cited to when it said that the objective standard was consistent with the precedent of the Supreme Court with respect to due process. And it would be odd to limit Kingsley to excessive force cases when the very cases that they were citing in order to articulate the objective standard were due process cases that did not involve excessive force, but involved other conditions of confinement claims by pretrial detainees. One of the cases, I mean, I'm sorry, I don't remember the name of the case, but one of the cases that the Supreme Court cited in Kingsley was the double bunk case. That's the Bell decision, Your Honor. And that clearly was not an excessive force. And I mean, so that case runs counter to the argument that the government is making here that we should limit Kingsley's holding to excessive force cases. That's exactly right, Your Honor. And the five circuits, the Second, Fourth, Sixth, Seventh, and Ninth circuits all point to, amongst many reasons why Kingsley should be interpreted more broadly, exactly the point that Your Honor just made, that the reliance on Bell, which is not a single site, but is really the crux of the Kingsley decision, makes clear that it's talking about due process cases more broadly. And that makes sense, given the textual differences and the differences in claims that you see between the Eighth Amendment and the Fourteenth Amendment, which Kingsley itself points to. The Supreme Court in the Wilson case articulates that under the Eighth Amendment, a person who has been convicted is able to be punished. They simply can't face cruel and unusual punishment. And that requires a showing of unnecessary and wanton infliction of pain. And it's that textual difference, it is that language of the case law that's interpreting the Eighth Amendment that provides the hook for the intent requirement under the Eighth Amendment. There's simply no analog under the Fourteenth Amendment when you're talking about pretrial detainees who have a presumption of innocence, who have not been convicted of any crime, and who cannot be punished, excuse me, in any way. Um, so this comes to us also with, um, well, let me backtrack. Let's say this court were to agree with you, and... Don't move. Thank you. Let's say this court agrees, and the objective, we say the objective standard or test or instruction applies and should have been given here, but it wasn't clearly established, um, at the time, and therefore, you know, the officers are entitled to qualified immunity. What's your best argument on qualified immunity that that, the clearly established prong here that this court would be wrong about that? The law of the denial of medical care, Your Honor, has long been clearly established in this circuit, and that degree of specificity with respect to the contours of the right matches the way that other circuits have talked about the qualified immunity, um, test within the context of grappling with Kingsley. I know we cited several in our brief, both the Kingsley case on remand, the Sandoval case out of the Ninth Circuit in the context of serious, uh, medical needs. I would also direct your attention to the Castro case, which was the first case to apply Kingsley outside of the excessive force, um, context, and there the Ninth Circuit defined the relevant right, um, as a right to be free from violence at the hands of other inmates, and determining that that right had been clearly established, the court held that qualified immunity was not appropriate, even though the deliberate indifference standard that applied to that right shifted from a subjective standard to an objective standard under Castro. And I think that makes sense if we look at the underlying function of the qualified immunity doctrine, which, as the Supreme Court has articulated in numerous cases, including the Casella case and Riojas, is to provide officers with fair notice, so that their, whether their conduct is lawful, so that they can comport their behavior with the Constitution. And from the standpoint of comporting your conduct, notice that an officer needs to respond to what they subjectively understand is a substantial risk of harm, is functionally equivalent to notice that an officer needs to respond to what an objectively reasonable officer would recognize as a substantial risk of harm. The only way that those two notices would differ with respect to conduct on the ground is if one concluded that an officer could simultaneously look into a cell and recognize that an objectively reasonable officer would see a substantial risk of harm, but still not take action because they simultaneously subjectively believed that there was not a substantial risk of harm. That's not the way that things operate on the ground. Certainly none of the defendants testified that that's what they thought was happening. And if an officer were to do that, it would mean that they were making an unreasonable choice. And by definition, the qualified immunity standard, as the Supreme Court explains in Pearson, is designed to protect officers when they're behaving reasonably. So we think that the Ninth Circuit and the Seventh Circuit got it right in determining that the state of mind shift between subjective to objective does not change the fact that the underlying right is clearly established and that qualified immunity should not apply. Thank you, counsel. Thank you. Thank you, counsel. At this time, would counsel for the athletes please introduce themselves on the record to begin? Good morning, Your Honors. May it please the Court. My name is Edward Whitesell. I'm from the City of Boston Law Department and I individual Boston police officers in this case. Ismael Almeida, Paul Michael Bertacci, Katia Ferreri, and Ryan Picarello. Let me start by asking you the same question, flip side of the question I asked opposing counsel. Why are we bound by Miranda-Rivera's and Zing? And counsel, I think, did a very good job in trying to distinguish why the issue wasn't squarely on point. So my question is can we decide this issue now or is it something that would have to wait to go and bunk? I think it would have to wait. I do think that that is the law of the circuit. Kingsley was decided by Miranda-Rivera was being decided and the Miranda-Rivera court clearly considered Kingsley and contrary to the argument that's made in this case, the First Circuit didn't think that Kingsley automatically applied to a denial of care claim. They applied it to the excessive force claim as they were required to do. But then they went on to apply the two-prong test to the denial of care and analyzing it. And granted it was a summary judgment issue. It wasn't post-trial as we have here. But the First Circuit didn't recognize what's being suggested to this panel, which is that Kingsley had some sort of general applicability to all 14th Amendment claims. Well, was it argued? It wasn't argued, Your Honor. But the suggestion here today is that Kingsley is obviously applicable. Kingsley is citing cases that don't deal with excessive force. That's true. They involve other excessive conditions. The Bell case, for example, talks about excessive regulation. It's the case with the two beds in one cell, which was... Excessive medical neglect. Excessive is a word. But excessive usually refers to action, not inaction. So you have excessive force. The court in Kingsley acknowledged that a subject of test still applies to whether or not an officer intended to do the act of using force. The object test applies to whether that is in fact excessive, whether a reasonable officer would have thought that excessive. And they talk about the high-speed pursuit case where they needed to apply a subjective test to determine whether or not the act that happened, the crash or the death of the person being pursued, was subjectively intended before they could move on to the issue of excessive force. And that's the same with the Bell case. Kingsley talks a lot, though, about, or discusses at least, the difference between people detained pre-trial and post-trial and the different constitutional rights that protect them. What are we to make of that? There's no dispute here that the 8th Amendment has a different standard, that the 14th Amendment has developed a standard that's different from the 8th Amendment as it relates to excessive force. So that's what the Kingsley case stands for. What the Kingsley case was doing was... Well, wouldn't it be broader? It doesn't say it is. It says that the question, in fact, the beginning of the case says the question that's proposed to us today is whether or not there's a subjective element to an excessive force case in a pre-trial detainee situation. The Supreme Court itself limits its holding to the excessive force context. I have to extrapolate from what the Supreme Court has said. And yes, its specific holding deals with an excessive force case. But as Judge Montalcavo is asking, they go through a large discussion about the rights of pre-trial detainees versus people who are convicted and are being punished under the 8th Amendment. There's no argument here that the 8th Amendment and the 14th Amendment have different standards as it relates to punishment. I think what's really clear here, or what's confusing here, is how punishment plays a role in the denial of medical care, unless you consider the intent of the police officers that are watching the pre-trial detainee. Justice Scalia in his dissent in the Kingsley case said he didn't believe that you could infer punishment from excessive force. I definitely don't think that you can infer punishment from a case where there was a denial of medical care. Could there be situations where there is clearly a denial of medical care that's intended to be punishment? Yes. But how can that be determined without looking at the intent of the officers? And that's why the deliberate indifference standard is so important here. Kingsley was simply bringing pre-trial detainee law in line with 4th Amendment jurisprudence regarding these cases involving excessive force. The Granville-Conner line of cases, where there's a purely objective analysis, if it's a shooting case, if it's an officer that's using excessive force in the context of making an arrest, those cases are all objective. And if you look at the dissent... If a prisoner is foaming at the mouth and on the floor seizing, then you would say that subjectively that officers should know that intervention is requirement, whereas in a situation where someone is just slumped over, as the case here, they shouldn't. Yes. I think under the subjective standard, I think the jury found this, that this case does not meet the subjective standard for deliberate indifference. I think if someone was foaming at the mouth, I think in their cell and that was witnessed by officers, I think that the jury would have come to an entirely different result under this jury instruction. I think they're two very different situations. Many of the cases, in fact, almost all of the cases that talk about the denial of medical care involve much more serious issues, people who complained of medical issues, who were not given care over long periods of time. Those cases are cases that present a very different case. But without looking at the subjective prong, it's impossible to tell what was in the officer's mind at that moment to determine why, whether this was punishment. If you're going to use a punishment standard and distinguish between the Eighth and the Fourteenth Amendments, that is the language that's different, the punishment language, cruel and unusual punishment. And there's no punishment allowed under the Fourteenth Amendment. So I want to talk about Bell. Before you talk about Bell, let me ask you, when the jury trial took place and the verdict was issued, Kingsley had been decided, correct? Or not yet? In this case, the jury? Yes. Kingsley was 2015 and the verdict was just in 2024. Okay. And then Miranda-Rivera and Zingg also had been decided? Miranda-Rivera was 2016, I believe, and Zingg was 2018. Okay. So they had both been decided post Kingsley coming out. I grant that the briefing, and I believe the argument occurred before the Kingsley case came down, but Miranda-Rivera definitely considers Kingsley in its determination of what standards to apply. And it did not apply the objective-only standard. It applied both the objective and subjective promise of delivering a different standard, even in the wake of Kingsley. And I think that fundamentally, there's a difference between cases like Bell. Doesn't the court in Miranda-Rivera specifically say they're going to consider the denial of medical care under the Eighth Amendment without reaching the boundaries of the Fourteenth Amendment? It does, Your Honor. And frankly, that's what the courts always did. I think it was the easiest way to do it, was not decide that issue. Because it wasn't presented. Because it wasn't presented. But we're being asked to decide. And I understand that. But I think that we're being asked to decide based on Kingsley. This Court could have made this decision when it decided Miranda-Rivera or Zingg. It certainly wasn't raised in Zingg. And it wasn't really raised in either of those cases. Here, it's only raised to us as a Fourteenth Amendment. We've got it as a pure legal question. But if Kingsley's so obvious, as is suggested here, how did we miss it twice? I mean, it strikes me that if it's still... I mean, I think it wasn't raised in Zingg. And the Court didn't need to get into it in Miranda-Rivera because it found there was a substantial issue of fact as to the lesser standard. And I understand that that case was a summary judgment case. I concede that case. And I understand that circuit courts have gone with the Eighth Amendment standard as a floor because it's easier than trying to establish the standard. But I think it's important to realize that this type of case is very different than the types of cases which have applied the objective standard, where there's action, there's something that can easily be determined to be punishment. When you have an excessive force case, if you apply force in a manner that's excessive, you can infer that you're doing so to punish the person that's in your custody. When you are putting people in bunks in a cell, and it's determined that that regulation is to meet the demands of what the facility needs, then you can say that you're doing that to punish the inmates, that that regulation is designed to punish. Now, the Bell case said that the double bunking was okay. But the logic behind the Bell case, and as it was quoted in Kingsley, was that by showing that actions are not rationally related to a legitimate, non-punitive governmental purpose, or that the actions appear excessive in relation to that purpose. That's what the Bell case was about. There was a legitimate purpose, non-punitive purpose for double bunking people and other conditions that that particular facility had imposed. And what the court said is that those have to be excessive in relation to the non-punitive purpose in order for it to be determined to be a constitutional violation. So the key objective test in both of those cases has to do with whether something was obsessive. Actions taken by personnel or by the facility as a whole were excessive. Here, there's no action. It's inaction. And it's impossible to tell whether or not the actions of the police officers in this particular case were designed to be punitive, which is what the Fourteenth and Eighth Amendment is all about, without looking at their intent, because they did not act. So why did they not act? Was their failure to act deliberate indifference? Was it negligence? Was it nothing at all, no wrongdoing at all? It has to be looked at from the perspective of the police officer in what they were doing in the moment. Of the circuit courts that have come out since Kingsley on the subjective standard, is there one there that you would draw our attention to? I thought maybe the Tenth Circuit. Yes. The case, I believe it's Strain versus Regadalo. That's the case that has the most extensive explanation for why Kingsley should not apply outside of the excessive force. And obviously, BELL stands for its own proposition. But the other cases simply say BELL's not, it's an excessive force case. The logic of those cases is simple because it's a simple answer. Kingsley is an excessive force case. That is all. That was all it was intended to be. When you, you can look at the Tenth Amendment case and I, it was all it was intended to be if it's citing non-force cases. Well, but your argument comes down to punishment should be in the eye of the beholder. I mean, that's what the subjective standard comes down to. And if the, if an officer didn't regard what he was doing or she was doing as punishment, regardless of what an objective, objectively reasonable officer would have done, then there's no culpability. I don't believe that punishment is in the eye of the beholder. I believe the objective standard does apply to excessive force and other affirmative acts that are taken that can be done excessively to punish inmates. It's impossible to determine. You've already conceded that excessive ignoring of an inmate's medical concerns would, could count. So then it comes down to line drawing for every, for every penal officer where you draw the line. I, I'm having trouble with the concept of excessive ignoring. I don't think the standard needs to be delivered in difference because without it, and delivered in difference with a subjective element, because without it, you can't tell, you can't infer from the fact that an officer didn't act, that he was intending to punish. When you can infer from force, the use of force that's deemed to be excessive, that it was intended to punish. You can infer from prison regulations that require tougher conditions or tougher situations of, of living within the cells. You can infer from that if they are deemed to be excessive, that this is punishment. I don't think you can infer from, especially not in the facts of this case, that there's any kind of punishment intended for the officers based on whatever number of cell checks they performed after Mr. Stofan had overdosed, that they intended to punish him. Especially given the circumstances, as Judge Moncavo pointed out, of what was going on, on the prison block, not on the prison block, but on the cell block that night, with the other events involving Mr. Perry, the homicide investigation into that, the internal affairs investigation into that, and just the number of inmates that were being processed that night. Can, can you help me with something? So, your brief, you argue, you know, even, I read it as, even if the court were to adopt this objective standard test, the defendants here still would not be liable under that standard. And then I, I kept going back and reading your brief, and I thought, well, I'm not actually sure, are you saying they wouldn't be liable under the fully objective standard, sort of the, the, say, the Second Circuit or the Fourth Circuit adoption of that, or under one prong of it? I think it would be harmless error for, in particular, two of the police officers. There was testimony from the only medical doctor in the case, who was an expert witness for the plaintiff, that the overdose occurred, and the severe medical need took place at 4 48 a.m., when he slumped over into that position. And that would include two? So, that would include school officers, Bertacci and Freire. I think it's fairly clear under the objective test, factually, that they would be, they would be, the jury would have rendered a favor under the objective test. And I think the district court acknowledged that, suggesting that he would have entered judgment as a matter of law for those two officers. And perhaps Officer Piccarello, who was a rookie, two weeks into the job, had never done booking before, was stuck there because there wasn't another officer to give him as a training officer. Officer Almeida said, he's a police officer, but he was no use to me at all that night. In the video, in one of his cell checks, his first cell check, he messes up and he does, he swipes the card wrong. He can't even figure out how to do that. So, I mean, I think the judge would have considered judgment as a matter of law for him as well. I think the judge would not have considered it for Officer Almeida, who was the booking officer. He testified that he was responsible for the cells and the cell checks. I don't think that the judge would have taken it away from the jury for Officer Almeida. That said, I don't think that automatically means the jury would have found against Officer Almeida. And I think the facts as they are in the record show, that given the circumstances of the evening, you can see some of the cell checks that he did, some of the cell checks where he peered into the cell. And we review for harmlessness ourselves anyways. Yes, so I don't know that the trial judge would have taken the case away from the jury for Officer Almeida. But I do believe that the jury could have independently concluded that Officer Almeida had not violated the objective test, given the circumstances of the night. He had seen Mr. Stolpen in this position react to stimuli earlier in the evening. We talk a lot about Officer Doolin and his reaction. He hadn't seen him, Mr. Stolpen, in this position earlier in the evening the way that the other officers had. What you're asking us is if we decide to, the circuit decides, and in this case we're going to apply the objective test, we should then determine if it's harmless as to the particular individual officers. Absolutely, and I think with respect the two of them is an open and shut case. I think with the others, based on the facts of the case and given the circumstances that evening, the jury could have very easily concluded that they didn't get past the first prong of the test. I see I'm out of time. I'm happy to address any other issues or questions. I have another question, may I? Yeah, go ahead. Just quickly on the qualified immunity component here, I think I understand your opponent to say, well, even if, you know, this court adopts the objective standard, that state of mind shift doesn't really change things from the lens of qualified immunity. How do you, what's your position on that? Well, you're telling police officers now, if you adopt a purely objective test, that they can't trust their own judgment, that it's what a reasonable officer in those circumstances would do with the benefit of hindsight and everything else. You have a chaotic situation. They're doing their cell checks every 15 minutes. They did not miss a single cell check. You can say, and one of the things that I did not address is the fear of this collapsing into a negligence standard, because you can argue, you could have been brought as a negligence claim. You could argue that the cell checks were done in a sloppy fashion. You could argue that this was negligent, but negligence is not a constitutional violation. And so I think with qualified immunity in particular, the answer to your question is that in these chaotic moments, in these situations, officers are trusting their judgment. Now they know it has to be an objectively reasonable standard. I think that's different than what it was before, and therefore they're not on notice. And that's consistent with what the Sixth Circuit did in Lawlor. They found qualified immunity in the amicus brief. There's another qualified immunity case that the amicus cited out of the Fourth Circuit, which is the circuit where Short comes from. They cite to that case to basically say that this isn't that big of a deal, because officers who didn't know about this change will still be able to rely on qualified immunity. So the Fourth Amendment case on qualified immunity came out before Short at a time when it was unresolved in that circuit, and there were people that were saying it could go one way or the other. They said, well, it doesn't matter. They would get qualified immunity, because at the time of the incident in that case, it was a dual-prong objective-subjective test. So in that case, I can give you the case citation, just because it's not in our brief. It was in the amicus brief. It was Mays v. Sprinkle, 992 F. 3rd at 295, and that's the Fourth Circuit. So the Fourth Circuit and the Sixth Circuit are both cases that have found that an objective test only applies, but have applied qualified immunity. And I can see there are other circuits that have disagreed, but I think that the Fourth Circuit's logic and the Sixth Circuit's logic is the right logic on qualified immunity. Thank you, counsel. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce yourself on the record? Jesse Rossman, your honor. Let me, before your three minutes start, let me ask the question, so that way I don't take time from your three minutes. Counsel mentioned that even if we adopt the objective test, under harmless error, there's two officers that would probably not be back in the case. What's your take on that? We disagree, your honor. We do think that there was sufficient evidence that is clearly established that there was a serious medical need that they were confronted with, and that both includes what they saw at booking, and Dr. McDonald's unabated testimony that there was at the time that Mr. Stilson at 2 a.m. was in booking already was facing a risk of overdose, and that required frequent monitoring, and the unabated testimony of Dr. Lyman that a reasonable officer who had seen what officers Bertacci and Ferrer saw would have recognized a risk and acted accordingly. So we think that it can be remanded for all four, but we agree that Officer Almeida presents the clearest case of why this standard makes a difference based on the evidence that was presented with respect to that officer in particular. A few points, your honor, with respect to strain. Both the Fourth Circuit's Short decision and the Sixth Circuit's Brawner decision came out after the Tenth Circuit's strain decision, and they walk through in detail why those circuits disagreed with the analysis in the Tenth Circuit. We think that's the proper approach for this circuit to take. I want to be very clear, we are not asking for a negligence standard. All five of the circuits that have adopted an objective standard have done so while expressly saying that it is a higher standard than negligence. We would anticipate this court would do the same, and just a few years ago this court in the McIntyre decision expressly contrasted negligence and civil recklessness and determined that civil recklessness and civil recklessness and a higher bar that we're asking for from negligence that would still constitute a constitutional violation. How do you respond to counsel's argument that the cases that have found the standard to apply required some kind of action versus inaction? So I think in particular what opposing counsel is referring to is the test that the Seventh Circuit and the Ninth Circuit has adopted, which is a four-prong test essentially. We think the better approach is what the Second and Fourth Circuit has done, which is specifically applying the civil recklessness standard. We think it's clearer, but even if this court was to adopt something more akin to the Seventh and Ninth Circuit, Your Honor, we believe we meet that standard. Those courts make very clear the kind of bar they're talking about with respect to a volitional act. So for example, the Ninth Circuit in Castro said with respect to inadequate monitoring of cells, if an officer was unconscious and that was the reason they didn't do the cell check, that wouldn't be a sufficiently volitional act. Similarly, the Seventh Circuit in the Miranda case held with respect to a prisoner who wasn't taken to the hospital, if the officers had forgotten that the person was in the jail, that would not be a volitional act. But here clearly the officers were conducting cell checks, and I would direct Your Honor's attention to Appendix 1225 and 1226, which are the videos, and we have the specific timestamps in our opening brief at pages 10, 13 through 15 and 16, that shows when those cell checks were happening, including 14 cell checks that happened after Mr. Perry had left. They were conducting the cell checks, and we know they needed to do, Officer Doolin did it. He knocked on the door the first time he conducted a cell check. There was certainly a sufficient intentional act, Your Honor, in order to meet that bar, and I would direct Your Honor's attention again to the evidence that was presented with respect to Almeida. In addition to those cell checks that were conducted, in addition to the unrebutted testimony from Dr. McDonald and Dr. Lyman, Officer Almeida himself testified that he knew, as someone who had been on the force for 13 years and had been a booking officer at D4 for more than five years, that people could take drugs into their cells, that he had seen people on all sorts of substances on the overnight shift, which this was, and that he had been on duty six weeks prior and conducted cell checks when Mr. Geiger, another pretrial detainee, had died, and Officer whether or not a jury could have found in Ms. Cox's favor if they had been appropriately instructed, and who bears the burden of when an officer makes a mistake about whether or not, when a reasonable jury, excuse me, when a reasonable officer would have recognized that there was a substantial risk of harm, and Kingsley and this Court's due process cases make clear that that burden shouldn't be by pretrial detainees under the due process clause. Thank you counsel. That concludes argument in this case.